## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | | |
|---|---|---|
| ANN MCGRATH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 22-cv-06782 |
| | ) | |
| LEE TKACHUK, individually, | ) | |
| KEYSTROKES TRANSCRIPTION | ) | |
| SERVICE, INC., and, | ) | |
| CHARTNET TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

NOW COMES the Plaintiff, Ann McGrath, individually and by her attorney, Bruce Winters of Legal Aid Society of Metropolitan Family Services, and complains against Defendants, Lee Marie Tkachuk, individually, Keystrokes Transcription Service, Inc., and Chartnet Technologies, Inc. Ms. McGrath alleges as follows:

### PRELIMINARY STATEMENT

1.      This action is brought to remedy Defendants' failure to pay Ms. McGrath the minimum wage for hours worked in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* (IMWL), and the Chicago Minimum Wage and Paid Sick Leave Ordinance, Chi. Mun. Code § 6-010-105 *et seq.*, and Defendants' failure to pay Plaintiffs compensation due in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* (IWPCA).

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331, Federal Question, arising under Section 216(b) of the FLSA, and has supplemental

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C § 1367.

3.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391, as Plaintiff's employment by Defendants occurred in the Northern District of Illinois, the facts and events giving rise to Plaintiff's claims occurred in this judicial district, and Defendants maintained offices and transacted business within this district.

## PARTIES

4.    Plaintiff Ann McGrath is a current resident of Chicago, Cook County, Illinois. Ms. McGrath was formerly employed by the Defendants as a medical transcriptionist from in or around 2004 through October 7, 2022. At all relevant dates and times during her employment, Ms. McGrath worked remotely for Defendants from her home in Chicago, Illinois.

5.    Defendant Lee Marie Tkachuk is the owner, president, and sole officer of both Defendant Keystrokes and Defendant Chartnet. Upon information and belief, Defendant Tkachuk is a resident of Kendall County, Illinois. As the sole officer of both corporate Defendants, Defendant Tkachuk oversaw the day-to-day business operations of both entities, had the ability to hire and fire employees, to direct and supervise the work of all employees, to sign on the business's checking accounts, including payroll accounts, and to set employee compensation. Throughout her employment, Ms. McGrath was regularly directed to speak directly to Defendant Tkachuk regarding any issue with her pay. At all relevant dates and times, Defendant Tkachuk was an employer of Ms. McGrath as that term is defined in the Section 203 of the FLSA, Section 105/3 of the IMWL, Section 6-105-010 of the CMWO, and Section 115/13 of the IWPCA.

6.    Defendant Keystrokes Transcription Service, Inc., ("Keystrokes") is an Illinois Corporation with its principal place of business in Yorkville, Illinois. Defendant Keystrokes

operates as a nationwide medical transcription service. At all relevant times, Defendant Keystrokes employed 4 or more employees.

7.      Defendant Keystrokes provides transcription services for a variety of healthcare providers throughout the United States. Defendant Keystrokes does business within this judicial district and is an enterprise engaged in commerce, as those terms are defined in the FLSA. Upon information and belief, during all relevant date and times, Defendant Keystrokes had an annual gross volume of sales or business done of no less than $500,000.00.

8.      Defendant Chartnet Technologies, Inc. ("Chartnet") is a Florida Corporation registered to do business in Illinois and has its principal place of business in Yorkville, Illinois. Upon information and belief, Defendant Chartnet operates as a nationwide medical transcription service. At all relevant times, Chartnet employed 4 or more employees.

9.      Defendant Chartnet provides transcription services for a variety of healthcare providers throughout the United States. Defendant Chartnet does business within this judicial district and is an enterprise engaged in commerce, as those terms are defined in the FLSA. Upon information and belief, during all relevant date and times, Defendant Chartnet had an annual gross volume of sales or business done of no less than $500,000.00.

## FACTUAL BACKGROUND

6.      In or around 2004, Defendants hired Ms. McGrath to work as a medical transcriptionist.

7.      For at least the past several years, and during all periods relevant to this Complaint, Ms. McGrath was employed by Defendants and worked entirely remotely for Defendants from her home in Chicago, Illinois.

8.      During the relevant periods, Ms. McGrath regularly worked five days a week,

from Tuesday to Saturday.

9.      Ms. McGrath's regular work schedule was from 9:30 a.m. to 5:30 p.m. During the relevant period, Defendants used an online time clock where Ms. McGrath would clock in and out for each shift.

10.     Throughout her employment, Ms. McGrath worked an average of 35 hours per week. Ms. McGrath's hours fluctuated based on which account she was assigned to work on.

11.     Ms. McGrath was paid on a per line basis for all lines she transcribed. The per line rate changed based on the account and type of transcription needed. Per line rates paid by Defendants ranged from $0.05 per line for voice recognition editing, $0.08 per typed line, and up to $1.25 for reports.

12.     At all times relevant hereto, Defendant Tkachuk operated Defendant Keystrokes and Defendant Chartnet as a single business entity, Defendant Keystrokes was the alter-ego of Defendant Chartnet, or, in the alternative, Defendants Keystrokes and Chartnet were joint-employers of Ms. McGrath, to wit:

  a.  Defendant Tkachuk was the sole officer and owner of both Keystrokes and Chartnet;

  b.  Keystrokes and Chartnet share a common registered agent in Defendant Tkachuk;

  c.  Keystrokes and Chartnet share a common principal place of business in Yorkville, Illinois and have common employees;

  d.  Defendant Tkachuk commingled the funds of Keystrokes and Chartnet, including, but not limited to, paying Ms. McGrath's wages out of both Keystrokes and Chartnet's accounts;

  e.  Ms. McGrath was assigned tasks from both Keystrokes and Chartnet; and,

f. Defendants have failed to observe corporate formalities.

13. At all times relevant hereto, Defendants maintained a bimonthly pay schedule with employees being paid on the 10th and 25th of each month. Paychecks were delayed by approximately four weeks, so that a pay period from the 1st to the 15th of the month would have a pay date on the 10th of the following month.

14. Throughout Ms. McGrath's employment, Defendants would regularly fall behind on wage payments and fail to pay employees on their scheduled pay dates. At times when Defendants were behind in wage payments, Ms. McGrath would regularly e-mail Defendant Tkachuk and other employees of Defendants to inquire why wages were not being paid.

15. For example, in or around Spring 2021, Defendants failed to pay Ms. McGrath any wages for at least four consecutive pay periods. Ms. McGrath sent multiple e-mails to Defendants regarding the non-payment which were either ignored or dismissed. Ms. Mcgrath eventually received her wages for these periods in or around July 2021.

16. Starting in or around late October 2021, Defendants stopped paying Ms. McGrath any wages at all.

17. Despite the fact that Defendants were not paying any wages to Ms. McGrath, Defendant Keystrokes continued to send Ms. McGrath paystubs each pay period documenting her hours worked, the wages owed, and listing accurate information for Ms. McGrath's direct deposit account.

18. Ms. McGrath continued to be employed by Defendants after October 2021 and up until October 2022, and continued to work an average of 35 hours per week for Defendants.

19. From late October 2022 to present, Ms. McGrath has only received eight wage payments from Defendants, each of which was paid months after the corresponding payday.

Each of these eight wage payments were released by Defendant Tkachuk only after Ms. McGrath pleaded to Defendant Tkachuk to pay her something so she could met her basic needs such as rent, food, and medical bills.

20.     From late October 2021 to Present, Ms. McGrath repeatedly and consistently demanded payment and sought information from Defendants on when wage payments would resume and when Defendants would begin to make payment on her unpaid wage periods.

21.     From October 2021 to October 2022, Defendants failed to provide Ms. McGrath any information on when payroll would resume or when her unpaid wages would be paid Instead, Defendants would wait for Ms. McGrath to beg for her wages, at which point Defendant Tkachuk would promise to release a paycheck immediately.

22.     For example, on January 11, 2022, Ms. McGrath e-mailed Defendant Tkachuk to ask for an update on when her unpaid wages for the preceding five pay periods would be paid. As of January 11, 2022, Ms. McGrath had not been paid any wages since in or around late October 2021. Ms. McGrath told Defendants that she was behind on her rent, was having to delay medical treatment for herself and her elderly mother, and her situation was becoming desperate due to Defendants' nonpayment of her wages.

23.     Defendant Tkachuk responded to Ms. McGrath's e-mail and stated that she would release a single wage payment to Ms. McGrath's account that day.

24.     On January 12, 2022, Ms. McGrath received a direct deposit from an account held by Chartnet in the amount of $616.41. This amount corresponded to the unpaid and outstanding net pay listed on Ms. McGrath's October 25, 2021 paystub.

25.     Between October 2021 and present, Defendants have engaged in a pattern of obfuscation and deception regarding when Ms. McGrath would be paid.

26.     For example, on July 5, 2022, Ms. McGrath emailed Defendant Tkachuk stating that she had not been paid in months and her situation continued to become more desperate with her unpaid rent and other bills.

27.     On or about July 6, 2022, Defendant Tkachuk responded stating that she would release a check to Ms. McGrath on Friday, July 8, 2022. On July 8, 2022, Defendants failed to release any payment to Ms. McGrath despite the Defendant Tkachuk's promise to do so.

28.     Ms. McGrath again emailed Defendant Tkachuk on or about July 8, 2022, to ask whether the promised payment had been released and reminded Defendant Tkachuk that her wages have not been paid for months. Defendant Tkachuk never responded to this e-mail.

29.     On July 12, 2022, Ms. McGrath again emailed Defendant Tkachuk to ask if she would receive the checks promised on July 8, 2022. Defendant Tkachuk again did not respond.

30.     On July 15, 2022, Ms. McGrath again emailed the Defendant Tkachuk to inquire why the July 8, 2022 promised payment had still not been deposited. Defendant Tkachuk responded saying that Defendant Keystrokes had in fact released two payments to Ms. McGrath. Ms. McGrath never received either of these payments.

31.     On July 18, 2022, Ms. McGrath again emailed the Defendant Tkachuk that she had not received the payments promised on July 8, 2022 and asked if there was any update as to when payment would be made by Defendants. Defendant Tkachuk again did not respond.

32.     The next payment Ms. McGrath received from Defendants came on or about September 2, 2022, two months after Defendant Tkachuk promised Ms. McGrath that she would release payment on July 8, 2022. On or about September 2, 2022, Ms. McGrath received a single payment in the amount of $434.09. This amount corresponded to the unpaid and outstanding net pay amount listed on Ms. McGrath's paystub dated February 10, 2022.

33.     On September 24, 2022, Ms. McGrath e-mailed Defendant Tkachuk and inquired whether she could be laid off or furloughed by Defendants as she had not been paid any wages in months. Defendant Tkachuk responded to Ms. McGrath and stated that Defendants had laid off or terminated most hourly transcriptionists and were working to come current on payroll. Defendant Tkachuk promised Ms. McGrath two direct deposits by the end of the day on September 26, 2022, or the next morning on September 27, 2022.

34.     On September 27, 2022, Ms. McGrath emailed Defendant Tkachuk back to inquire if the promised payments had been deposited but received no response. On or about September 28, 2022, Ms. McGrath received a payment from Chartnet in the amount of $579.47. This amount corresponded to the unpaid and outstanding net pay amount listed on her February 25, 2022 paystub. Ms. McGrath never received the second payment promised by Defendant Tkachuk on September 24, 2022.

35.     On October 5, 2022, Ms. McGrath emailed Defendant Tkachuk to ask about her unpaid wages owed to her by Defendants. Defendant Tkachuk did not respond to Ms. McGrath's e-mail, but instead sent out a company-wide email stating that the failure to pay employees was due to Defendant Keystrokes changing payroll companies.

36.     Defendants constructively discharged Ms. McGrath through their ongoing failure to pay any wages to her and failure to provide her any information on when wage payments would resume. Ms. McGrath employment by Defendants ended on October 7, 2022.

37.     Defendants have knowingly and willfully not paid Ms. McGrath any wages from at least the pay date on or about February 25, 2022 through her final pay period in October 2022, despite Ms. McGrath's repeated requests for information and demands for payment.

38.     At all relevant dates and times, Defendant Tkachuk directly controlled when and

if payments would be released to Ms. McGrath by Defendants.

39.     Upon information and belief, during the relevant time periods, Defendants willfully and knowingly chose to continue paying other employees and to not pay Ms. McGrath her wages.

## COUNT I – VIOLATION OF THE FLSA, 29 U.S.C. § 206
## DEFENDANT KEYSTROKES - FAILURE TO PAY THE MINIMUM WAGE

40.     Paragraphs 1 through 39 are incorporated by reference as though fully set forth herein.

41.     In the relevant time periods, Defendant Keystrokes engaged in interstate commerce within the meaning of the FLSA and had an annual gross volume of sales made or business done in excess of $500,000.

42.     During the relevant periods, Ms. McGrath's was an employee engaged in the production of goods for commerce, in that she prepared medical transcripts for health care providers outside the state of Illinois.

43.     Defendant Keystrokes was an employer of Ms. McGrath as that term is defined in the FLSA.

44.     Ms. McGrath was not exempt from the minimum wage under the FLSA.

45.     From at least February 2022 up until the end of her employment in October 2022, Defendant Keystrokes failed to pay Ms. McGrath any wages for her hours worked, and Ms. McGrath's effective hourly rate was $0.00.

46.     Defendant Keystrokes was aware of the requirement to pay Ms. McGrath the minimum wage and willfully refused to do so.

47.     As a direct and proximate result of the above alleged willful and reckless acts and omissions by Defendant Keystrokes, Ms. McGrath suffered damages and is entitled to legal and

equitable relief including unpaid minimum wages and liquidated damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann McGrath, respectfully requests that this Honorable Court:

A.    Grant Ann McGrath damages in the amount of her

unpaid minimum wages and interest;

B.    Grant Ann McGrath liquidated damages;

C.    Grant Ann McGrath attorneys' fees, costs, and disbursements, and;

D.    Grant Ann McGrath such further relief as this Court deems just and

equitable.

**COUNT II – VIOLATION OF THE FLSA, 29 U.S.C. § 206**
**DEFENDANT CHARTNET - FAILURE TO PAY THE MINIMUM WAGE**

48.    Paragraphs 1 through 39 are incorporated by reference as though fully set forth

herein.

49.    In the relevant time periods, Defendant Chartnet engaged in interstate commerce

within the meaning of the FLSA and had an annual gross volume of sales made or business done

in excess of $500,000.

50.    During the relevant periods, Ms. McGrath's was an employee engaged in the

production of goods for commerce, in that she prepared medical transcripts for health care

providers outside the state of Illinois.

51.    Defendant Chartnet, as the alter-ego of Defendant Keystrokes was an employer of

Ms. McGrath as that term is defined in the IMWL and was required to pay its employees,

including Ms. McGrath, the minimum wage.

52.    In the alternative, Defendant Chartnet, by issuing compensation to Ms. McGrath

for wages owed by Keystrokes and by directing and controlling Ms. McGrath's work, was a

joint-employer of Ms. McGrath

53.     Ms. McGrath was not exempt from the minimum wage under the FLSA.

54.     From at least February 2022 up until the end of her employment in October 2022, Defendant Keystrokes failed to pay Ms. McGrath any wages for her hours worked, and Ms. McGrath's effective hourly rate was $0.00.

55.     Defendant Chartnet was aware of the requirement to pay Ms. McGrath the minimum wage and willfully refused to do so.

56.     As a direct and proximate result of the above alleged willful and reckless acts and omissions by Defendant Chartnet, Ms. McGrath suffered damages and is entitled to legal and equitable relief including unpaid minimum wages and liquidated damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann McGrath, respectfully requests that this Honorable Court:

B.     Grant Ann McGrath damages in the amount of her unpaid minimum wages and interest;

C.     Grant Ann McGrath liquidated damages;

D.     Grant Ann McGrath attorneys' fees, costs, and disbursements, and;

E.     Grant Ann McGrath such further relief as this Court deems just and equitable.

**COUNT III – VIOLATION OF THE FLSA, 29 U.S.C. § 206
DEFENDANT TKACHUK - FAILURE TO PAY THE MINIMUM WAGE**

57.     Paragraphs 1 through 39 are incorporated by reference as though fully set forth herein.

58.     In the relevant time periods, Defendants Keystrokes and Chartnet engaged in interstate commerce within the meaning of the FLSA and had an annual gross volume of sales

made or business done in excess of $500,000.

59.     During the relevant periods, Ms. McGrath's was an employee engaged in the production of goods for commerce, in that she prepared medical transcripts for health care providers outside the state of Illinois.

60.     Defendant Tkachuk, as the sole officer and CEO of Defendants Keystrokes and Chartnet, oversaw their day-to-day operations, set employee compensation, was responsible for payroll decisions, and had the ability to sign on Defendant Keystrokes' and Chartnet's checking accounts, including payroll accounts. Defendant Tkachuk was an employer as that term is defined in the FLSA.

61.     At all relevant dates and times, Defendant Tkachuk was aware that Ms. McGrath was not being paid and that wages were owed to her.

62.     Defendant Tkachuk knowingly and willfully failed to pay Ms. McGrath any wages from at least February 2022 through the end of her employment in October 2022, and Ms. McGrath's effective hourly rate during this period was $0.00 per hour, in violation of the FLSA.

63.     Defendant Tkachuk was aware of the requirement to pay Ms. McGrath the minimum wage and willfully refused to do so.

64.     As a direct and proximate result of the above alleged willful and reckless acts and omissions by Defendant Tkachuk, Ms. McGrath suffered damages and is entitled to legal and equitable relief including unpaid minimum wages and liquidated damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann McGrath, respectfully requests that this Honorable Court:

C.      Grant Ann McGrath damages in the amount of her unpaid minimum wages and interest;

D.      Grant Ann McGrath liquidated damages;

E.      Grant Ann McGrath attorneys' fees, costs, and disbursements, and;

F.      Grant Ann McGrath such further relief as this Court deems just and equitable.

## COUNT IV – VIOLATION OF THE IMWL, 820 ILCS 105/4
## DEFENDANT KEYSTROKES - FAILURE TO PAY THE MINIMUM WAGE

68.     Paragraphs 1 through 39 are incorporated by reference as though fully set forth herein.

69.     Defendant Keystrokes was an employer of Ms. McGrath as that term is defined in the IMWL and was required to pay its employees, including Ms. McGrath, the minimum wage.

70.     No exemption for minimum wage under the IMWL or its supporting rules applied to either Ms. McGrath or Keystrokes Transcription.

71.     Ms. McGrath was required to be compensated at least the minimum wage rate of $12.00 per hour pursuant to the IMWL.

72.     From at least February 2022 to the end of her employment in October 2022, Defendant Keystrokes failed to pay Ms. McGrath any wages for her hours worked. Ms. McGrath's effective hourly rate during this period was $0.00 per hour, in violation of the IMWL.

73.     Defendant Keystrokes was aware of the requirement to pay Ms. McGrath the minimum wage under the IMWL and willfully refused to pay Ms. McGrath her due minimum wages.

74.     As a direct and proximate result of the above alleged willful and reckless acts and omissions by Defendant Keystrokes, Ms. McGrath suffered damages and is entitled to legal and equitable relief including unpaid minimum wages and treble damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann McGrath, respectfully requests that this Honorable Court:

    A. Grant Plaintiff damages in the amount of her unpaid minimum wages and treble damages;

    B. Grant Plaintiff statutory damages in the amount of 5% of the underpayment for each month wages went unpaid;

    C. Grant Plaintiff her reasonable attorneys' fees, costs, and disbursements incurred in bringing this action; and,

    D. Grant Plaintiff such further relief as this Court deems just and equitable.

## COUNT V – VIOLATION OF THE IMWL, 820 ILCS 105/4
## DEFENDANT CHARTNET - FAILURE TO PAY THE MINIMUM WAGE

75.    Paragraphs 1 through 39 are incorporated by reference as though fully set forth herein.

76.    Defendant Chartnet, as the alter-ego of Defendant Keystrokes was an employer of Ms. McGrath as that term is defined in the IMWL and was required to pay its employees, including Ms. McGrath, the minimum wage.

77.    In the alternative, Defendant Chartnet, by issuing compensation to Ms. McGrath for wages owed by Keystrokes and by directing and controlling Ms. McGrath's work, was a joint-employer of Ms. McGrath.

78.    No exemption for minimum wage under the IMWL or its supporting rules applied to either Ms. McGrath or Defendant Chartnet.

79.    Ms. McGrath was required to be compensated at least the minimum wage rate of $12.00 per hour pursuant to the IMWL.

80.    From at least February 2022 to the end of her employment in October 2022,

Defendant Chartnet failed to pay Ms. McGrath any wages for her hours worked. Ms. McGrath's effective hourly rate during this period was $0.00 per hour, in violation of the IMWL.

81.     Defendant Chartnet was aware of the requirement to pay Ms. McGrath the minimum wage under the IMWL and willfully refused to pay Ms. McGrath her due minimum wages.

82.     As a direct and proximate result of the above alleged willful and reckless acts and omissions by Defendant Chartnet, Ms. McGrath suffered damages and is entitled to legal and equitable relief including unpaid minimum wages and treble damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann McGrath, respectfully requests that this Honorable Court:

E.  Grant Plaintiff damages in the amount of her unpaid minimum wages and treble damages;

F.  Grant Plaintiff statutory damages in the amount of 5% of the underpayment for each month wages went unpaid;

G.  Grant Plaintiff her reasonable attorneys' fees, costs, and disbursements incurred in bringing this action; and,

H.  Grant Plaintiff such further relief as this Court deems just and equitable.

**COUNT VI – VIOLATION OF THE IMWL, 820 ILCS 105/4**
**DEFENDANT TKACHUK - FAILURE TO PAY THE MINIMUM WAGE**

83.     Paragraphs 1 through 39 are incorporated by reference as though fully set forth herein.

84.     Defendant Tkachuk, as the sole officer and CEO of Defendants Keystrokes and Chartnet, oversaw their day-to-day operations, set employee compensation, was responsible for payroll decisions, and had the ability to sign on Defendant Keystrokes' and Chartnet's checking

accounts, including payroll accounts. Defendant Tkachuk was an employer as that term is defined in the IMWL.

85.     Defendant Tkachuk knowingly and willfully failed to pay Ms. McGrath any wages from at least February 2022 through the end of her employment in October 2022, and Ms. McGrath's effective hourly rate during this period was $0.00 per hour, in violation of the IMWL.

86.     Defendant Tkachuk was aware of the requirement to pay Ms. McGrath the minimum wage and willfully refused to do so.

87.     As a direct and proximate result of the above alleged willful and reckless acts and omissions by Defendant Tkachuk, Ms. McGrath suffered damages and is entitled to legal and equitable relief including unpaid minimum wages and treble damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann McGrath, respectfully requests that this Honorable Court:

I.   Grant Plaintiff damages in the amount of her unpaid minimum wages and treble damages;

J.   Grant Plaintiff statutory damages in the amount of 5% of the underpayment for each month wages went unpaid;

K.  Grant Plaintiff her reasonable attorneys' fees, costs, and disbursements incurred in bringing this action; and,

L.   Grant Plaintiff such further relief as this Court deems just and equitable.

**COUNT VII - VIOLATION OF CMWO, CHI. MUN. CODE 6-105-010**
**DEFENDANT KEYSTROKES - FAILURE TO PAY THE MINIMUM WAGE**

89.     Paragraphs 1 through 39 are incorporated by reference as if fully set forth herein.

90.     No exemption for minimum wage under the CMWO or its supporting rules applied to either Ms. McGrath as an employee or Keystrokes Transcription as an employer.

91.     At all relevant dates and times, Ms. McGrath exclusively worked within the City of Chicago and performed two or more hours of work during each two-week period.

92.     Defendant Chartnet failed to pay Ms. McGrath any wages from at least February 2022 through the end of her employment in October 2022, and Ms. McGrath's effective hourly rate during this period was $0.00 per hour, in violation of the CMWO.

93.     Defendant Chartnet was aware of the CMWO's requirements to pay a minimum wage and willfully failed to do so.

94.     As a direct and proximate result of the above alleged willful and reckless acts and omissions by Defendant Keystrokes, Ms. McGrath suffered damages and is entitled to legal and equitable relief including unpaid minimum wages and treble damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ms. Ann McGrath, respectfully requests that this Honorable Court:

M.  Grant Plaintiff damages in the amount of her unpaid minimum wages and treble damages;

N.  Grant Plaintiff statutory damages in the amount of 5% of the underpayment for each month wages went unpaid;

O.  Grant Plaintiff her reasonable attorneys' fees, costs, and disbursements incurred in bringing this action; and,

P.  Grant Plaintiff such further relief as this Court deems just and equitable.

**COUNT VIII - VIOLATION OF CMWO, CHI. MUN. CODE 6-105-010
DEFENDANT CHARTNET - FAILURE TO PAY THE MINIMUM WAGE**

95.     Paragraphs 1 through 39 are incorporated by reference as if fully set forth herein.

96.     Defendant Chartnet, as the alter-ego of Defendant Keystrokes was an employer of

Ms. McGrath as that term is defined in the CMWO and was required to pay its employees, including Ms. McGrath, the minimum wage.

97.     In the alternative, Defendant Chartnet, by issuing compensation to Ms. McGrath for wages owed by Keystrokes and by directing and controlling Ms. McGrath's work, among other actions, was a joint-employer of Ms. McGrath.

98.     No exemption for minimum wage under the CMWO or its supporting rules applied to either Ms. McGrath as an employee or Defendant Chartnet as an employer.

99.     At all relevant dates and times, Ms. McGrath exclusively worked within the City of Chicago and performed two or more hours of work during each two-week period.

100.     Defendant Chartnet failed to pay Ms. McGrath any wages from at least February 2022 through the end of her employment in October 2022, and Ms. McGrath's effective hourly rate during this period was $0.00 per hour, in violation of the CMWO.

101.     Defendant Chartnet was aware of the CMWO's requirements to pay a minimum wage and willfully failed to do so.

102.     As a direct and proximate result of the above alleged willful and reckless acts and omissions by Defendant Chartnet, Ms. McGrath suffered damages and is entitled to legal and equitable relief including unpaid minimum wages and treble damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ms. Ann McGrath, respectfully requests that this Honorable Court:

A.  Grant Plaintiff damages in the amount of her unpaid minimum wages and treble damages;

B.  Grant Plaintiff statutory damages in the amount of 5% of the underpayment for

each month wages went unpaid;

C. Grant Plaintiff her reasonable attorneys' fees, costs, and disbursements incurred in

bringing this action; and,

D. Grant Plaintiff such further relief as this Court deems just and equitable.

**COUNT VIII - VIOLATION OF CMWO, CHI. MUN. CODE 6-105-010
DEFENDANT TKACHUK - FAILURE TO PAY THE MINIMUM WAGE**

103.    Paragraphs 1 through 39 are incorporated by reference as if fully set forth herein.

104.    No exemption for minimum wage under the CMWO or its supporting rules

applied to either Ms. McGrath as an employee or Keystrokes Transcription as an employer.

105.    At all relevant dates and times, Ms. McGrath exclusively worked within the City

of Chicago and performed two or more hours of work during each two-week period..

106.    Defendant Tkachuk, as the sole officer and CEO of Defendants Keystrokes and

Chartnet, oversaw their day-to-day operations, set employee compensation, was responsible for

payroll decisions, and had the ability to sign on Defendant Keystrokes' and Chartnet's checking

accounts, including payroll accounts. Defendant Tkachuk was an employer as that term is

defined in the CMWO.

107.    Defendant Tkachuk knowingly and willfully failed to pay Ms. McGrath any

wages from at least February 2022 through the end of her employment in October 2022, and Ms.

McGrath's effective hourly rate during this period was $0.00 per hour, in violation of the

CMWO.

108.    Defendant Tkachuk was aware of the requirement to pay Ms. McGrath the

minimum wage and willfully refused to do so.

109.    As a direct and proximate result of the above alleged willful and reckless acts and

omissions by Defendant Tkachuk, Ms. McGrath has suffered damages and is entitled to legal and

equitable relief including unpaid minimum wages and treble damages.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ms. Ann McGrath, respectfully requests that this Honorable Court:

A. Grant Plaintiff damages in the amount of her unpaid minimum wages and treble damages;

B. Grant Plaintiff statutory damages in the amount of 5% of the underpayment for each month wages went unpaid;

C. Grant Plaintiff her reasonable attorneys' fees, costs, and disbursements incurred in bringing this action; and,

D. Grant Plaintiff such further relief as this Court deems just and equitable.

**COUNT X – VIOLATION OF THE IWPCA, 820 ILCS § 115/3**
**KEYSTROKES TRANSCRIPTION - FAILURE TO PAY EARNED WAGES**

104. Paragraphs 1 through 39 are incorporated by reference as though fully set forth herein.

105. Defendant Keystrokes entered into an employment agreement with Ms. McGrath in or around 2004 when it hired Ms. McGrath to work as a medical transcriptionist.

106. The IWPCA requires an employer to pay wages to an employee at least semi-monthly, and all wages earned by an employee must be paid no later than 13 days after the end of the pay period in which the wages were earned.

107. The IWPCA further requires an employer to pay final compensation to separated employees at the time of separation, but not later than the next regularly scheduled payday.

108. During all relevant periods, Ms. McGrath worked an average of 35 hours per week each week.

109. Defendant Keystrokes failed to timely pay wages owed to Ms. McGrath under the employment agreement during all pay periods between the payday staring on or about October 25, 2021, and ending with the payday on or about February 10, 2022..

110. Further, Defendant Keystrokes failed to pay Ms. McGrath any wages for her hours worked during all pay periods between approximately February 10, 2022 through on October 7, 2022, in violation of the IWPCA and the employment agreement.

111. As a direct and proximate result of the above alleged willful and knowing acts and omissions by Defendant Keystrokes, Plaintiff has suffered damages and are entitled to legal and equitable relief including their unpaid wages under the employment contract.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann McGrath, respectfully request that this Honorable Court:

A. Grant Plaintiff damages in the amount of her unpaid wages and interest;

B. Grant Plaintiff damages in the amount of 5% of the underpayments for each month wages were due and remained unpaid;

C. Grant Plaintiffs damages in an amount equal to attorneys' fees, costs, and disbursements, incurred by Plaintiff herein; and,

D. Grant Plaintiff such further relief as this Court deems just and equitable.

**COUNT XI – VIOLATION OF THE IWPCA, 820 ILCS § 115/3 DEFENDANT CHARTNET - FAILURE TO PAY EARNED WAGES**

112. Paragraphs 1 through 39 are incorporated by reference as though fully set forth herein.

113. Defendant Chartnet, as the alter-ego of Defendant Keystrokes or alternatively as a joint employer of Ms. McGrath, was subject to the employment agreement made by Defendant Keystrokes and Ms. McGrath in or around 2004 and any subsequent revisions and/or

amendments to its terms.

114.    The IWPCA requires an employer to pay wages to an employee at least semi-monthly, and all wages earned by an employee must be paid no later than 13 days after the end of the pay period in which the wages were earned.

115.    The IWPCA further requires an employer to pay final compensation to separated employees at the time of separation, but not later than the next regularly scheduled payday.

116.    During all relevant periods, Ms. McGrath worked an average of 35 hours per week each week.

117.    Defendant Chartnet failed to timely pay wages owed to Ms. McGrath under the employment agreement during all pay periods between the payday staring on or about October 25, 2021, and ending with the payday on or about February 10, 2022.

118.    Further, Defendant Keystrokes failed to pay Ms. McGrath any wages for her hours worked during all pay periods between approximately February 10, 2022 through on October 7, 2022, in violation of the IWPCA and the employment agreement.

119.    As a direct and proximate result of the above alleged willful and knowing acts and omissions by Defendant Keystrokes, Plaintiff has suffered damages and are entitled to legal and equitable relief including their unpaid wages under the employment contract.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann McGrath, respectfully request that this Honorable Court:

A.  Grant Plaintiff damages in the amount of her unpaid wages and interest;

B.  Grant Plaintiff damages in the amount of 5% of the underpayments for each month wages were due and remained unpaid;

C.   Grant Plaintiff damages in an amount equal to attorneys' fees, costs, and

disbursements, incurred by Plaintiff herein; and,

D. Grant Plaintiff such further relief as this Court deems just and equitable.

## COUNT XII – VIOLATION OF THE IWPCA, 820 ILCS § 115/3
## DEFENDANT TKACHUK - FAILURE TO PAY EARNED WAGES

120.    Paragraphs 1 through 39 are incorporated by reference as though fully set forth herein.

121.    The IWPCA requires an employer to pay wages to an employee at least semi-monthly, and all wages earned by an employee must be paid no later than 13 days after the end of the pay period in which the wages were earned.

122.    The IWPCA further requires an employer to pay final compensation to separated employees at the time of separation, but not later than the next regularly scheduled payday.

123.    During all relevant periods, Ms. McGrath worked an average of 35 hours per week each week.

124.    Defendants Keystrokes and Chartnet failed to timely pay wages owed to Ms. McGrath under the employment agreement during all pay periods between the payday staring on or about October 25, 2021, and ending with the payday on or about February 10, 2022.

125.    Further, Defendants Keystroke and Chartnet failed to pay Ms. McGrath any wages for her hours worked during all pay periods between approximately February 10, 2022 through on October 7, 2022, in violation of the IWPCA and the employment agreement.

126.    Defendant Tkachuk, as the sole officer and CEO of Keystrokes and Chartnet, knowingly permitted Defendants Keystrokes and Chartnet to violate the IWPCA by failing to pay Ms. McGrath timely or at all, and in doing so, Defendant Tkachuk was an employer for pursuant to the IWPCA.

127.    As a direct and proximate result of the above alleged willful and knowing acts and

omissions by Defendant Tkachuk, Plaintiff has suffered damages and is entitled to legal and equitable relief including her unpaid wages under the employment contract.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Ann McGrath, respectfully request that this Honorable Court:

    A.  Grant Plaintiff damages in the amount of her unpaid wages and interest;

    B.  Grant Plaintiff damages in the amount of 5% of the underpayments for each month wages were due and remained unpaid;

    C.  Grant Plaintiff damages in an amount equal to attorneys' fees, costs, and disbursements, incurred by Plaintiff herein; and,

    D.  Grant Plaintiff such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff Ann McGrath requests a jury trial on all issues of fact and law raised by the allegations of this Complaint.

Respectfully Submitted,
ANN MCGRATH, Plaintiff
By: s/ Bruce Winters_____
Bruce Winters, Attorney for Plaintiff

Bruce Winters
ARDC#: 633560
Attorney for Plaintiff
Legal Aid Society
101 N. Wacker Drive
Suite 1700
Chicago, IL 60606
(312) 986-4122
WintersB@metrofamily.org